Gary S. LEWIS, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 57332.

Missouri Court of Appeals,
Western District.

April 25, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court May 30, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for respondent.

Before: EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Presiding Judge.

Gary S. Lewis appeals from the order of the circuit court denying his Rule 29.15 [1]

---

1. All rule references are to the Missouri Rules of Criminal Procedure (1998), unless otherwise indicated.

motion for post-conviction relief after an evidentiary hearing. He was jury-convicted, as a prior and persistent offender, §§ 557.036, RSMo Supp.1996, 558.016, 558.019,[2] in the Circuit Court of Cooper County of one count of robbery in the first degree, § 569.020.1(3), and one count of kidnapping, § 565.110, for which he was sentenced to concurrent terms of twenty years imprisonment in the Missouri Department of Corrections.

In his sole point on appeal, the appellant claims that the motion court erred in denying his Rule 29.15 motion because he received ineffective assistance of appellate counsel in that his counsel failed to raise on appeal the issue of the sufficiency of the evidence to convict him of robbery in the first degree.

We affirm.

### Facts

On September 20, 1995, Sandra Wilson was working at a Total convenience store in Sedalia, Missouri, which closed nightly at 10:00 p.m. At approximately 9:15 p.m. that night, while Wilson, the only person working at that time, was outside preparing for closing, a car drove up. Wilson then went back inside the store.

The appellant entered the store, came to the counter, and began a discussion with Wilson. He asked her how much money she made. After Wilson stated that she made $5 per hour, he told her that it was not enough to lose her life over. The appellant then announced that it was a robbery and told Wilson, "Don't make me shoot you," while motioning beneath his sweater. Wilson never saw a gun, but opened the cash register, as the appellant had ordered her to do. She also complied with the appellant's order for her to come around the counter and take her smock off, after placing the money on the counter. As Wilson was taking off her smock, the appellant told her to hurry, or he was going to "blow [her] fucking head off."

The appellant then ordered Wilson to get into his car, which she did. He then drove around with her, until letting her go in front of another convenience store.

The appellant was subsequently charged in the Circuit Court of Pettis County, Missouri, with one count of robbery in the first degree, in violation of § 569.020, and one count of kidnapping, in violation of § 565.110. His jury trial commenced on February 25, 1997. At the close of the State's evidence, the appellant moved for a judgment of acquittal alleging, *inter alia,* that the State presented "no direct evidence whatsoever upon which a jury could find that defendant used or threatened the immediate use of a dangerous instrument or deadly weapon," as required to convict a person of robbery in the first degree. The motion was overruled, and the jury returned its verdict finding the defendant guilty of both robbery and kidnapping.

On March 25, 1997, the appellant filed a "Motion For Judgment Of Acquittal Notwithstanding The Verdict Of The Jury, Or In The Alternative, For A New Trial," which alleged, *inter alia,* that the State failed to make a submissible case for robbery in the first degree because there was insufficient evidence to show that the "defendant threatened the 'immediate use' of a dangerous instrument or deadly weapon." The trial court heard evidence on the motion on May 12, 1997, and overruled it. That same day, the trial court sentenced the appellant, as a prior and persistent offender, to concurrent terms of twenty years imprisonment in the Missouri Department of Corrections. The appellant appealed to this court, which affirmed his convictions in *State v. Lewis,* 972 S.W.2d 591 (Mo.App.1998). On appeal, his appellate counsel did not raise a claim regarding the sufficiency of the evidence to support his conviction for robbery in the first degree.

On April 28, 1998, the appellant filed his *pro se* Rule 29.15 motion to vacate, set

---

**2.** All statutory references are to RSMo 1994, unless otherwise indicated.

aside or correct his judgment and sentence. After the appellant filed several *pro se* amendments to the motion and was appointed counsel, he moved for an extension of thirty days to file any further amended motions, which the motion court granted on September 28, 1998. On November 30, 1998, the appellant filed an amended motion to vacate, set aside or correct his judgment on the ground that, *inter alia,* his appellate counsel was ineffective for failing to raise on appeal the sufficiency of the evidence to support his robbery conviction. An evidentiary hearing on the appellant's Rule 29.15 motion was held on March 12, 1999. On April 1, 1999, the motion court issued its findings of fact and conclusions of law and entered its order denying the appellant's motion.

This appeal follows.

### Standard of Review

Appellate review of a denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the motion court's findings and conclusions issued in support thereof, as required by Rule 29.15(j), are clearly erroneous. Rule 29.15(k); *Moss v. State,* 10 S.W.3d 508, 511 (Mo. *banc* 2000). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss,* 10 S.W.3d at 511.

### I.

■■■ In his sole point on appeal, the appellant claims that the motion court erred in denying his Rule 29.15 motion because he received ineffective assistance of appellate counsel in that his counsel failed to raise on appeal the issue of the sufficiency of the evidence to sustain his conviction for robbery in the first degree. The appellant was charged and convicted under § 569.020.1(3), which provides, in pertinent part: "A person commits the crime of robbery in the first degree when he forcibly steals property and in the

course thereof he, or another participant in the crime, ... [u]ses or threatens the immediate use of a dangerous instrument." As the appellant points out, due process requires that, in order to convict a person of a crime, the State is required to prove beyond a reasonable doubt each and every element of the crime charged. *State v. Grim,* 854 S.W.2d 403, 417 (Mo. *banc* 1993). In this respect, he contends that the State did not prove, beyond a reasonable doubt, that, in the course of forcibly stealing the money from the convenience store, he "threatened" the store clerk with a dangerous instrument, to-wit, a gun, as charged, because there was no evidence to show that he actually possessed a gun.

"To support a [Rule 29.15] motion [ ... ] due to ineffective assistance of appellate counsel, strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it. The right to relief ... inevitably tracks the plain error rule; *i.e.,* the error that was not raised on appeal was so substantial as to amount to a manifest injustice or a miscarriage of justice."

*Moss,* 10 S.W.3d at 514–15 (*quoting Reuscher v. State,* 887 S.W.2d 588, 591 (Mo. *banc* 1994)). We conclude, for the reasons stated, *infra,* that the evidence at trial was sufficient to demonstrate that the appellant, in the course of forcibly stealing the money from the convenience store, threatened the clerk with the use of a gun, as charged, and thus, applying the standard set forth in *Moss,* reject his claim of ineffective assistance of appellate counsel based on this issue.

■■■ The evidence adduced at trial by the State to show that the appellant threatened the use of a dangerous instrument in the course of stealing the money from the convenience store came from the store clerk, Sandra Wilson, who testified

under questioning by the prosecutor, in pertinent part:

A. ... [the appellant] said, What do you make, about around $5 an hour. And again, I just was kind of noncommittal, because what do you say. And he says, Well, that's not enough to lose your life over, is it.

Q. What did you say when he said that?

A. I basically just said, Excuse me. And he said, I'm not joking. This is a robbery. Don't do anything stupid. Don't make me shoot you.

Q. As he said, Don't make me shoot you, was he doing anything as he stood across the counter from you?

A. Yes.

Q. What was he doing?

A. Making a motion toward the underneath edge of his sweater, to reach up underneath his sweater.

Q. Can you tell us how he was dressed?

A. Yes.

Q. Go ahead.

A. He had on blue jeans, had on a green sweater type that had like white pinstripes, real small, and he had on a green and white baseball cap.

Q. Was the sweater untucked?

A. Yes.

Q. So when he said that this was a robbery, don't do anything stupid, did he actually put his hand up under his shirt or was he gesturing in that area?

A. He was going – he was reaching under his sweater at the point I looked away.

Q. Did you ever see a gun?

A. No, I did not.

Q. At that point or at any other time during the course of the evening?

A. No.

...

A. I proceeded to turn and head down the counter like he told me to and to take the smock off. And I couldn't get the smock off. I guess – I don't know why. It got caught on my shoulders, so I wasn't getting it off fast enough and moving fast enough. And he told me to hurry up or he was going to blow my fucking head off.

...

Q. He had never shown you a gun, correct?

A. Yes.

Q. Did you believe that he may have some means to hurt you?

A. Yes.

From this, a reasonable jury could infer that the appellant was threatening to shoot the store clerk with a gun. A "dangerous instrument" is defined in § 556.061(9) as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." A gun, which is a "deadly weapon," as defined in § 556.061(10), is also a dangerous instrument, as used in § 569.020.1(3). *State v. Steffenhagen*, 671 S.W.2d 344, 345–46 (Mo. App.1984). Thus, in our view, the evidence was sufficient to demonstrate that the appellant, in the course of stealing the money from the convenience store, "threatened" the immediate use of a "dangerous instrument."

The appellant argues that the State could not convict him for robbery in the first degree, under § 569.020.1(3), based on a "threat" of the immediate use of a gun, unless there was proof that he actually possessed one, relying on *State v. Mulder*, 916 S.W.2d 346 (Mo.App.1996). His reliance on *Mulder* is misplaced.

In *Mulder*, the defendant was charged and convicted with an *attempt* to commit robbery in the first degree. *Id.* at 347. On appeal, the defendant challenged his conviction based on his claim that the evidence was insufficient to convict because the State failed to prove he actually possessed a gun in the alleged attempt to commit robbery in the first degree. *Id.* at 347–48. In this regard, the evidence favorable to conviction reflected that the de-

fendant entered the gas station, slammed down a stick on the counter, and requested money of the clerk, who was situated behind a bullet-proof security window. *Id.* at 347. He then told her, " 'Don't make me pull a gun on you.' " *Id.* The Eastern District of this court, applying the common law attempt "apparent possibility" analysis, under *State v. Reyes,* 862 S.W.2d 377, 381–83 (Mo.App.1993), which was subsequently overruled by the Missouri Supreme Court in *State v. Withrow,* 8 S.W.3d 75, 78–80 (Mo. *banc* 1999), reversed the defendant's conviction. *Mulder,* 916 S.W.2d at 348. Even assuming, *arguendo,* that *Mulder* has any further vitality after *Withrow,* we reject the appellant's reading of the case and its application and effect on this appeal.

█ In relying on *Mulder,* the appellant reads it as holding that, even in the case where the charge of robbery in the first degree is predicated on the "threat" of immediate use of a dangerous weapon or instrument, rather than its actual use or display of the same, the State is required to prove that the defendant actually possessed the same. This is contrary to the holdings in *State v. Belton,* 949 S.W.2d 189, 192–93 (Mo.App.1997); *State v. McCracken,* 829 S.W.2d 634, 635–36 (Mo. App.1992); and *State v. Archer,* 814 S.W.2d 315, 317 (Mo.App.1991), all of which held that the State does not have to show that the defendant actually possessed a dangerous instrument, only that there was evidence from which the fact finder could reasonably conclude that the victim believed that the defendant was threatening its use. In this respect, the *Belton* court stated:

> " 'Robbery in the first degree may be found where the victim is in fear even though there was no real possibility of injury.' *State v. Collins,* 567 S.W.2d 144, 146 (Mo.App.1978). The fact that a victim perceives there to be a weapon that remains unseen is sufficient whether or not, in fact, such a weapon exists. *Id.* Whether or not the object that is perceived as a deadly weapon or dangerous instrument is in fact capable of pro-

ducing harm is unimportant. The threat to use the object to produce harm transmogrifies it into a dangerous instrument."

*Belton,* 949 S.W.2d at 192–93 (*quoting Archer,* 814 S.W.2d at 317).

It makes no sense to us that our appellate courts would require proof of actual possession of a dangerous weapon or instrument in cases of attempted robbery, but not robbery, as we would have to believe if we were to adopt the appellant's reading of *Mulder.* In our view, a careful reading of *Mulder* reflects that the court there simply rested its holding on a finding that the evidence was insufficient for the jury to conclude that the victim believed that the defendant was actually threatening to use a gun in that it was apparent to her that he did not possess one. This can be gleaned from the court's statement:

> The same analysis applies to defendant's statement regarding a gun. The cashier knew from her own observation he did not possess a gun. No gun was displayed, used, or threatened in a manner which would give an appearance of possible use. This is not a case where defendant produced a toy gun or unloaded gun. Toy guns and unloaded guns can be used to give an apparent possibility to commit a robbery first degree by the use of a dangerous weapon. However, mere words are not equivalent to a gun or a reasonable facsimile of a gun. Here, the cashier doubted the existence of a gun or defendant's ability to produce a gun. The cashier testified that if she thought he had a gun she would have given him the money. Defendant argues the state's evidence proved he did not possess, use, or threaten to use a dangerous instrument or deadly weapon. We agree.

*Mulder,* 916 S.W.2d at 348.

Unlike in *Mulder,* in our case, the evidence is such that the victim could have reasonably believed that the appellant had a gun, which he was threatening to use if she did not give him the money as demanded. In this regard, the record re-

flects that not only did he make the verbal threats regarding the use of a gun, discussed, *supra*, but in conjunction therewith, he "motion[ed] toward the underneath edge of his sweater, to reach underneath his sweater." The victim also testified that she believed he had the means to hurt her even though he never actually showed her a gun.

For the reasons stated, we find that the evidence was sufficient to convict the appellant of robbery in the first degree, § 569.020.1(3), as charged, and, thus, the motion court did not err in denying the appellant's Rule 29.15 motion for post-conviction relief for his appellate counsel's failure to raise this issue on appeal.

Point denied.

### Conclusion

The order of the motion court denying the appellant's Rule 29.15 motion is affirmed.

HOWARD and HOLLIGER, JJ., concur.